**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0013n.06

No. 12-5043

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jan 03, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| REBEKAH CARDENAS-MEADE, | ) | |
| | ) | **ON APPEAL** FROM THE UNITED |
| Plaintiff-Appellant, | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| v. | ) | TENNESSEE |
| | ) | |
| PFIZER, INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

**BEFORE: CLAY and STRANCH, Circuit Judges; BELL, District Judge**[*]

**PER CURIAM.** Plaintiff-Appellant Rebekah Cardenas-Meade appeals an order granting summary judgment to Defendant-Appellee Pfizer, Inc. For the following reasons, we **AFFIRM**.

**BACKGROUND**

Cardenas-Meade began working at Pfizer as a pharmaceutical sales representative in January 2006. Pfizer has a training program for all representatives. After 18-20 months, this program culminates in a three-day evaluative session known as Phase VI. In October 2007, Cardenas-Meade failed the written exam at Phase VI, at which point she confided in program supervisors that she was having marital and family care issues. She alleges that, after this disclosure, she was treated in a discriminatory and abusive manner the rest of Phase VI, most notably by her supervisors, James MacDougall and Bo Shealy.

---

[*] The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

Per company policy, Cardenas-Meade understood she would be placed on probation when she returned to work and would have six months to pass Phase VI or be terminated. Cardenas-Meade never returned to work. Instead, she immediately went on medical leave because of the emotional trauma she suffered at Phase VI. Pfizer referred Cardenas-Meade to Dr. Carrie Booher, a psychologist, for treatment. She diagnosed Cardenas-Meade with severe anxiety and depression. During Cardenas-Meade's leave, Dr. Booher regularly submitted treatment plans to Pfizer advising it that Cardenas-Meade was taking medication and undergoing counseling, but that returning to work for her current supervisors, Shealy and MacDougall, was not yet an option because they played a significant role in contributing to her stress. During this time, Human Resources Representative Kerry Sorvino investigated Cardenas-Meade's complaint of gender and disability discrimination at Phase VI. Sorvino concluded that Cardenas-Meade failed Phase VI for legitimate, non-discriminatory reasons. In April 2008, Cardenas-Meade and Dr. Booher requested three accommodations in order for her to be able to return to work. All of these involved Cardenas-Meade returning to work for different supervisors. In accordance with company policy, Pfizer declined to transfer Cardenas-Meade or to assign her to a different supervisor because she had not yet passed Phase VI. Because her doctor had not yet released her to return to work with her current supervisors, Shealy and MacDougall, Pfizer extended her leave without pay in April 2008.

Despite knowing of Pfizer's policy prohibiting representatives from working a second job with a competitor, Cardenas-Meade began working for inVentive as a pharmaceutical representative on May 12, 2008. Cardenas-Meade claims she considered herself discharged when her leave, benefits, and income ended on April 13, 2008, and she had not been allowed to return to work.

Cardenas-Meade filed charges of gender and disability discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 14, 2008. On June 17, 2008, Pfizer

terminated her when it discovered she was working for inVentive. Cardenas-Meade filed a charge of retaliation with the EEOC following her termination. Pfizer contends it was unaware of her first charge with the EEOC when it made the decision to terminate her.

On June 17, 2009, Cardenas-Meade filed a complaint in district court alleging violation of the Family and Medical Leave Act, disability discrimination, gender discrimination, and retaliation. Pfizer moved for summary judgment on February 11, 2011. This motion was granted on December 5, 2011, and judgment was entered in favor of Pfizer. Cardenas-Meade timely appealed the entry of judgment on her disability discrimination and retaliation claims.

## STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment *de novo. Bowling Green v. Martin Land Dev. Co.,* 561 F.3d 556, 558 (6th Cir. 2009). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, this court examines all evidence in the light most favorable to the non-moving party. *Tingle v. Arbors at Hillard*, 692 F.3d 523, 529 (6th Cir. 2012).

## DISCUSSION

### I. Disability Discrimination

To prevail on her disability claim under either the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12117,[1] or the Tennessee Disability Act ("TDA"), Tenn. Code. § 8-50-103,[2]

---

[1]The ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, amended several sections of the ADA. These amendments went into effect after Plaintiff's termination and were not made retroactive. Accordingly, they do not govern our analysis.

[2]"A claim brought under the THA [Tennessee Handicap Act, now known as the TDA] is analyzed under the same principles as those utilized for the Americans with Disabilities

Cardenas-Meade was required to show (a) she was disabled, (b) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation,[3] and (c) she suffered an adverse employment action because of a disability. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2011); *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000), *abrogated on other grounds by Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

To establish a disability under the pre-amendment ADA or the TDA an individual must (1) have a physical or mental impairment which "substantially limits" her in at least one major life activity, (2) have a record of such impairment, or (3) be regarded by the employer as having such an impairment. 42 U.S.C. § 12102(2) (1990); Tenn. Code § 4-21-102(3)(A). "Major life activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires,

---

Act." *Sasser v. Quebecor Printing (USA) Corp.*, 159 S.W.3d 579, 584 (Tenn. Ct. App. 2004). *See also Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000) ("We, therefore, may look to federal law for guidance in enforcing our own anti-discrimination laws.") Unless expressly noted, the following law and analysis applies to both the TDA and the ADA.

[3]The TDA does not require that a reasonable accommodation be made. *See* Tenn. Code. § 8-50-103.

at a minimum, that plaintiff[] allege [she is] unable to work in a broad class of jobs." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999).

The district court determined that Cardenas-Meade was not disabled because her illness did not substantially limit the major life activity of working. The court stated that the "major life activity of working is not 'substantially limited' if plaintiff merely cannot work under a certain supervisor because of anxiety and stress related to his review of her job performance." Cardenas-Meade, however, argues that the district court ignored the evidence that her depression and anxiety substantially affected major life activities other than "work." This evidence included: Dr. Booher's December 2007 diagnosis, which included a below-average "global assessment functioning" score; her own deposition testimony and interrogatory responses noting that her illness substantially affected her "eating, sleeping, concentrating, doing daily activities . . . [and] daily functioning"; and extensive correspondence between Pfizer representatives and Dr. Booher.

The district court appears to have misinterpreted Cardenas-Meade's claim. The court relied largely on Dr. Booher's statement that the primary triggering event for Cardenas-Meade's illness "occurred in the workplace." As an initial matter, however, the fact that a triggering event occurs in the workplace should not dictate how a court considers the impact of an ailment on *non-work* major life activities. If Cardenas-Meade sustained a physical injury on the job, a court could properly find that the injury limited *non-work* activities such as lifting or driving, necessitating reasonable accommodation in the workplace. Neither Pfizer nor the district court adequately explained why Cardenas-Meade's mental illness should be treated differently.

Considering the limitations on Cardenas-Meade's non-work activities, however, the court still must conclude that she has not met her burden of showing disability within the meaning of the pre-amendment ADA. "When determining whether an individual is substantially limited in

performing a major life activity, courts should consider three factors: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact of the impairment." *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 581 (6th Cir. 2007) (citing 29 C.F.R. § 1630.2(j)(2)). Thus, "[o]ne of the factors that is relevant to determining whether an impairment amounts to a disability is whether it is 'permanent or long-term.'" *Bryson v. Regis Corp.*, 498 F.3d 561, 575 (6th Cir. 2007) (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 196 (2002)). As the district court observed, "[g]enerally, short-term temporary restrictions are not substantially limiting." *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996).

Despite the voluminous record in this case, Cardenas-Meade has been unable to direct this court to evidence that the limits on her non-work activities were anything more than a short-term, temporary result of the anxiety and depression triggered by actions leading up to and during her failed Phase VI examination. While Cardenas-Meade has stated that prior to the October 2007, Phase VI examination she had been having problems with her marriage and with child care, she has not asserted that her alleged disability predated the Phase VI examination.

Moreover, while Dr. Booher stated that Cardenas-Meade was not ready to return to work for Shealy and MacDougall until June 2008, Cardenas-Meade testified that her symptoms began alleviating in February 2008 and she was feeling "a lot better" by March 2008. She testified that by that time, "I was able to concentrate. I was sleeping better, I was eating better. I was doing the things that were necessary in order for me to be able to perform a job better." Cardenas-Meade has not pointed to any evidence in the record that Dr. Booher or another treating physician considered her anxiety and depression to be a permanent condition or one with a "long-term impact." *See Novak*, 503 F.3d at 581. The long-term impact of a condition is not necessarily dispositive of whether it may qualify as a disability under the ADA. In this case, however, the lack of evidence

supporting long-term impact – considered along with the other relevant factors and the entire record – do not provide sufficient evidence such that a reasonable jury could find Cardenas-Meade "disabled" under the terms of the pre-amendment ADA.

Alternatively, Cardenas-Meade could establish an ADA disability (or a TDA disability) by showing that Pfizer regarded her as disabled. *See* 42 U.S.C. § 12102(2) (1990). A person may be regarded as disabled in two ways under the pre-amendment ADA: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489. The evidence submitted by Cardenas-Meade establishes that Pfizer did not view her as substantially limited or treat her differently on account of a perceived disability.

Cardenas-Meade relies primarily on an April 30, 2008, letter from Pfizer to Cardenas-Meade to demonstrate Pfizer's regard of her condition. This letter stated that "[*b*]*ased on your healthcare provider's statements*, you are not yet medically able to return to work." The emphasized clause refers to statements made by Dr. Booher, in an April 16 Return to Work form and an April 21 letter, that Cardenas-Meade could perform all the functions of her pharmaceutical representative job, but could not do so if under the supervision of Shealy and MacDougall. Thus, this is not evidence that Pfizer viewed Cardenas-Meade as substantially limited. Moreover, Pfizer's neutral rule against pre-Phase VI transfers weakens Cardenas-Meade's claim that Pfizer treated her differently on account of a perceived disability. While Cardenas-Meade testified that other Pfizer employees are allowed to transfer or take advantage of Pfizer's transitional program, she did not rebut Pfizer's testimony that these transfer policies do not apply to employees who have yet to successfully complete Phase VI training.

Because Cardenas-Meade was not disabled within the meaning of the pre-amendment ADA or the TDA as a matter of law, it is unnecessary to consider the other elements necessary to make out a claim of disability discrimination. However, even if th court considered Cardenas-Meade's argument that Pfizer failed to reasonably accommodate her, it would be difficult for Cardenas-Meade to show that her requested accommodations were reasonable.

Employers "who fail to engage in the interactive process in good faith[] face liability... if a reasonable accommodation would have been possible." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000) (en banc), *vacated on other grounds by* 535 U.S. 391 (2002). But while a reasonable accommodation under the ADA does include "reassignment to a vacant position," 42 U.S.C. § 12111(9)(B), requests for re-assignment to a new supervisor are disfavored. *See, e.g.*, *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 526 (7th Cir. 1996). While it is appropriate to consider the reasonableness of such a request on a "case-by-case" basis, there is a "presumption . . . that a request to change supervisors is unreasonable, and the burden of overcoming that presumption (i.e., of demonstrating that, within the particular context of plaintiff's workplace, the request was reasonable) therefore lies with the plaintiff." *Kennedy v. Dresser Rand Co.*, 193 F.3d 120, 122-23 (2d Cir. 1999). Here, given that Cardenas-Meade was in a probationary initial training period as an employee and had already failed the required final examination, it is not clear that the benefits of such a transfer would have outweighed the associated administrative costs. *See Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 581 (3d Cir. 1998) (noting the administrative burdens of a transfer where it was requested in order to avoid exposure to current co-workers).

Nonetheless, this court does not need to reach this issue. Because Cardenas-Meade was not disabled within the meaning of the pre-amendment ADA or the TDA as a matter of law, the entry

of summary judgment on the disability discrimination claims in favor of Pfizer was appropriate. *See Morris*, 260 F.3d at 665.

## II. Retaliation

To establish a prima facie case for retaliation a plaintiff must show:

> (1) that plaintiff engaged in an activity protected by [the relevant statutes]; (2) that the exercise of his [or her] civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Hollins v. Atlantic Co.*, 188 F.3d 652, 661 (6th Cir. 1999) (quoting *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991)). If a prima facie case is established, the burden shifts to the employer to proffer a legitimate, non-retaliatory reason for the adverse employment action. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). If the employer does so, the burden shifts back to the plaintiff to show that such a reason was pretext for discrimination. *Id.*

Cardenas-Meade engaged in the following protected activities: (1) taking FMLA leave; (2) making an internal complaint of gender discrimination; and (3) making a complaint regarding disability and gender discrimination to the EEOC. However, Cardenas-Meade fails to show that Pfizer took any adverse action on account of these activities.

Cardenas-Meade alleged the following adverse employments actions: (1) Pfizer's refusal to return her to work after she took short-term leave; (2) Pfizer's termination of her; (3) Pfizer's alleged inclusion of falsified Phase VI scores on her annual performance evaluation; (4) Pfizer's failure to communicate about the results of her discrimination complaints; (5) Pfizer's alleged failure to discuss her requests for a reasonable accommodation; (6) Pfizer's documentation of allegedly false medical judgment in the April 30, 2008, letter; and (7) Pfizer's decision to stop paying her income

and benefits on April 13, 2008. There is no evidence that any of these actions were taken on account of Cardenas-Meade's protected behavior.

First, Dr. Agatha Nody, Pfizer's Regional Medical Director, was responsible for evaluating whether Cardenas-Meade was medically cleared to return to work. At all times, Dr. Nody followed the recommendations of Dr. Booher, Cardenas-Meade's treating psychologist, including the recommendation that Cardenas-Meade could not return to work for her supervisors until at least June 2008. In following this recommendation, Dr. Nody was unaware that Cardenas-Meade had made complaints of discrimination. Additionally, Pfizer was under no obligation to return Cardenas-Meade to work for different supervisors.

Second, the evidence undisputedly shows that Pfizer terminated Cardenas-Meade after finding out that she started working for a competitor, in violation of company policy. This is a legitimate, non-discriminatory reason for termination. Cardenas-Meade has offered no evidence that this was a pretext for retaliation.

Third, it is undisputed that Pfizer gives negative performance evaluations to every employee who fails Phase VI. There was no evidence that any scores from Phase VI were falsified. Instead, there is uncontroverted testimony from the evaluators that Cardenas-Meade earned failing scores.

Fourth and fifth, a failure to communicate does not constitute an adverse employment action. Even if it could, Pfizer offered evidence that human resources did not contact Cardenas-Meade with the results of the discrimination investigation or to discuss her requests for transfer to different supervisors because it was Pfizer policy not to do so with employees on medical leave. Cardenas-Meade herself testified that she knew she could not be transferred until after she successfully completed Phase VI.

Sixth, the statement made by Dr. Nody that Cardenas-Meade was unable to return to work was not false. As discussed, Dr. Nody's statement was in reference to Dr. Booher's opinion that Cardenas-Meade could not return to work for her current supervisors. Cardenas-Meade has not claimed that she was able to return to work for her current supervisors in April 2008.

Seventh, Cardenas-Meade's short-term disability benefits expired naturally in April 2008, not because of a subjective decision by Pfizer. She applied for long-term disability in May 2008 and was denied such benefits on May 15, 2008. However, she was hired at inVentive on May 12, 2008, three days before the letter denying her long-term disability benefits application. Consequently, Cardenas-Meade's unpaid leave was consistent with Pfizer policy, and she remained employed up until the time she accepted employment with a competitor and Pfizer terminated her in response.

In sum, Cardenas-Meade has offered no evidence that Pfizer took adverse employment actions against her on account of her protected activities. Even if she had, there is no evidence that any of Pfizer's legitimate, non-discriminatory reasons for its actions were pretexts for retaliation. Accordingly, Pfizer was entitled to summary judgment on Cardenas-Meade's retaliation claims.

## CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.