NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0453n.06

Case No. 18-5928

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| DOUGLASS BOLDEN II, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Aug 28, 2019 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| LOWES HOME CENTERS, LLC, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: MERRITT, CLAY, and ROGERS, Circuit Judges.

**MERRITT, Circuit Judge.** Plaintiff Douglass Bolden appeals the grant of summary judgment to defendant Lowe's Home Centers, LLC, on his federal and state-law claims of employment discrimination based on his religion and a disability. Bolden was a long-time employee of defendant Lowe's at two locations in Middle Tennessee. He was primarily employed as a delivery driver during his employment, although he performed other duties and was a cashier at the time of his discharge. As a Seventh Day Adventist, plaintiff cannot work on Saturdays. Lowe's knew this when it hired him, and accommodated his religion throughout his 14-year employment by not scheduling him to work on Saturdays.

On appeal, plaintiff argues that disputed issues of material fact preclude summary judgment. However, plaintiff has not identified disputed issues supported by admissible evidence,

and instead relies on conclusory allegations about Lowe's perceived motives. Furthermore, even if plaintiff had successfully made out a prima facie case of discrimination on the basis of religion or disability, plaintiff failed to demonstrate that Lowe's stated nondiscriminatory reason for terminating plaintiff—that he violated store policy by leaving his cash register to follow a shoplifter out of the store—was a pretext for discrimination. For the following reasons, we affirm the judgment of the district court.

**I.**

**Facts and Procedural History**

Lowe's hired plaintiff in August 2003 as a delivery driver at its Madison, Tennessee location. Plaintiff, a Seventh Day Adventist, informed Lowe's he would be unavailable for work from sundown on Friday to sundown on Saturday in observance of the Sabbath, in accordance with his religious beliefs. Lowe's accommodated plaintiff's religion by scheduling him to work only on days and times that were consistent with his religious beliefs throughout his employment at the Madison, Tennessee location. In 2005, plaintiff and his wife divorced, and plaintiff requested a transfer to the Dickson, Tennessee store. Lowe's granted his request, and plaintiff became a driver in the Dickson store's delivery department. Lowe's continued to accommodate plaintiff's religious beliefs by not scheduling him to work on Saturdays.

After plaintiff transferred to the Dickson store, Lowe's implemented a "Scheduling Matrix System," in which full-time employees were not given a set schedule but instead were given two days off each week. The days off rotated over a four-week period. Lowe's hoped to staff each department so every full-time employee had at least one weekend off every four weeks. After the implementation of the new scheduling system, plaintiff requested to be scheduled off from work every other Sunday in order to comply with court-ordered visitation with his minor daughter. Lowe's granted plaintiff's request, which resulted in plaintiff receiving a unique schedule because

he had both Saturday and Sunday off every other weekend. This arrangement continued without incident for almost 10 years.

On January 12, 2015, plaintiff received his annual review from assistant manager Scottie Gunkel. On his review form, plaintiff checked the box indicating he had little interest in a job change, but he also checked the box indicating his interest in exploring the training required for a promotion, hand writing on the form "depends on an offer." Bolden Dep. at 184-87 & Ex. 22. However, plaintiff never applied for a promotion because he "believed" his unavailability to work on Saturdays would prevent him from being selected. He said if there was a management position available that did not require working on Saturdays, he would be interested. *Id*. at 64-67, 76.

On February 13, 2015, plaintiff was issued an "initial warning" based on a customer complaint and a report from his immediate supervisor, Chris Vickery, that plaintiff was insubordinate, took too long to complete deliveries, ran personal errands while on the clock for Lowe's, and refused to timely comply with instructions. Green Decl. ¶¶ 14-16. Plaintiff refused to sign the warning form. Bolden Dep. at Ex. 9. No disciplinary action was taken against plaintiff based on the warning.

In September 2015, seven months after plaintiff received the warning, store manager Nick Green and Human Resources Manager Sean LeMaster asked plaintiff if he could work Saturdays because the store was short staffed. Plaintiff reiterated that he could not work Saturdays due to his religious beliefs. After this meeting, assistant store manager David Owens noticed plaintiff was getting two complete weekends off—both Saturday and Sunday—on his four-week rotation, while all other drivers were working every weekend based on staffing needs. Owens Decl. ¶¶ 4-5. Human resources informed Owens that plaintiff was entitled to receive every Saturday off based on his religion, but the company was not required to grant plaintiff's request to be off every other

Sunday to accommodate his custody arrangement. After discovering that plaintiff's child was over 18 by this point and the custody order was no longer applicable, Owens revised plaintiff's schedule to continue giving him every Saturday off for religious reasons, but only one Sunday off during the four-week rotation, consistent with the other drivers' schedules. *Id*. at ¶¶6-8.

On November 13, 2015, plaintiff complained to Angelie Rodriguez, the human resources manager, that he believed Owens changed his schedule in retaliation for his refusal to work on Saturdays. Bolden Dep. at 94-104 & Ex. 8. Lowe's explained that was not the case, but rather his schedule was changed only as the result of the changed staffing needs and was changed only as to Sundays, not as to Saturdays. Plaintiff continued to work without incident and had every Saturday off from work.

Plaintiff injured his ankle at work on July 3, 2016, and filed a workers' compensation claim. He also requested an accommodation at work because his physician restricted him from picking up more than 25 pounds, and prohibited kneeling, squatting and climbing stairs. Seay Decl. at Ex. A. Plaintiff returned to work on July 12 and, consistent with his physician's restrictions, was given temporary duty at the customer service desk. *Id*. at ¶¶ 6-7. Two months later, in September 2016, plaintiff reinjured his ankle while on vacation. His physician ordered further restrictions on plaintiff's physical movements based on this injury, concluding that plaintiff will need a position "that will allow him to stay off his feet, with [his] left foot elevated, for the next week." *Id*. at Ex. B. Bolden continued to work the temporary light-duty position at the customer service desk. *Id*. at ¶ 9. On October 7, 2016, plaintiff's workers' compensation claim was denied due to the intervening non-work-related injury. *Id*. at ¶ 10. Plaintiff remained in the same light-duty temporary position.

The next week, plaintiff's physician restricted his activities further to sedentary work "as much as possible." The new restrictions prohibited plaintiff from "carrying, pushing or pulling any weight whatsoever, squatting or kneeling whatsoever," and ordered that plaintiff "can only bend/stoop occasionally." Bolden Dep. at 129-36 & Ex. 10. Plaintiff filed a new request for accommodation, but Lowe's did not have a position to accommodate the restrictions. He was offered unpaid leave, which he accepted. Seay Decl. at ¶ 12. Plaintiff later requested and received 12 weeks of leave under the Family and Medical Leave Act, followed by more unpaid leave. Plaintiff was later certified as "incapacitated" by his physician from July 1, 2016, to April 17, 2017. *Id*. at ¶ 13; Bolden Dep. at 148-52 & Exs. 12, 15. In March 2017, plaintiff's physician lifted some of the restrictions on plaintiff's activities earlier than anticipated, and plaintiff was able to return to work. He was offered and accepted a cashier job, which was less physically demanding than his previous delivery position. Seay Decl. ¶ 15-16.

On June 26, 2017, plaintiff was operating a cash register when a shoplifter walked out of the store with stolen merchandise. In accordance with Lowe's "Recover Merchandise Without Detention and Deter Shoplifters" policy, plaintiff addressed the shoplifter to verify whether he had a receipt. Bolden Dep. at Ex. 19. The shoplifter ignored him and continued to leave the store. Plaintiff claims that because there were no managers or head cashiers present, he was "acting management" during this incident, and it was in this capacity that he went outside to get the shoplifter's license plate number. *Id.* at 169. The shoplifter did not get into a car, but fled Lowe's property on foot to a neighboring field where he was detained by three customers who were in the parking lot at the time of the incident. Plaintiff then walked over to the field to give testimony to the police. *Id*. at 162-75. Lowe's conducted an investigation into plaintiff's conduct during this incident. Lowe's determined that plaintiff abandoned his active register and pursued the shoplifter

outside the store in violation of store policy and its "Rules of Conduct." Plaintiff concedes he did not have and did not seek explicit permission to leave his register or to follow a shoplifter out of store. *Id*. at 162-75. Based on this information, Lowe's terminated plaintiff on July 10, 2017.

Plaintiff filed an Amended Complaint on July 24, 2017, bringing claims of religious discrimination, failure to accommodate his religion, discrimination on the basis of disability, and failure to accommodate his disability. Lowe's filed for summary judgment, and the district court granted the motion on all claims. *Bolden v. Lowes Home Ctrs., LLC*, No. 3:17-cv-00741, 2018 WL 4181614 (M.D. Tenn. Aug. 31, 2018). The district court granted summary judgment to Lowe's on the following claims: (1) religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq*., and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq*.; (2) failure to promote on the basis of religion in violation of Title VII and the Tennessee Human Rights Act; and (3) failure to accommodate a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*., and the Tennessee Disabilities Act, Tenn. Code Ann. § 8-50-103.[1]

## II.

### A. <u>Religious Discrimination Claims</u>

Plaintiff advances claims of religious discrimination, failure to accommodate his religion and failure to promote him due to his religion all in violation of Title VII and the Tennessee Human Rights Act. Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). To prevail on a claim of religious discrimination

---

[1] The district court declined to rule on plaintiff's claims of interference with the Family and Medical Leave Act, workers' compensation retaliation, and intentional infliction of emotional distress, finding them waived because plaintiff did not dispute them in his opposition to the summary judgment motion. Plaintiff does not pursue these claims on appeal. Reply Br. at 6.

under Title VII and the Tennessee Human Rights Act, which use identical analyses in this context, *see Burdette v. Fed. Express Corp.*, 367 F. App'x 628, 632 (6th Cir. 2010), a plaintiff must present either direct evidence of discrimination or make out a prima facie case of indirect discrimination. Plaintiff puts forth numerous arguments regarding religious discrimination, some of which he claims rely on direct evidence and others on indirect evidence.

A plaintiff may establish a claim of discrimination either by presenting direct evidence of discrimination or by presenting circumstantial evidence that would support an inference of discrimination. *See, e.g., Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007). Where the claim is based on circumstantial evidence, our court uses the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *Tepper*, 505 F.3d at 515. Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination, the elements of which may vary slightly depending on the theory asserted. At the summary judgment stage, a plaintiff generally must produce evidence that could lead a reasonable fact finder to believe that the plaintiff: (1) is a member of a protected group; (2) was subjected to an adverse employment action; (3) was qualified for the position; and (4) was treated less favorably than similarly-situated nonprotected employees. 411 U.S. at 802. A plaintiff's burden at the prima facie stage is "not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for its adverse action. *Tepper*, 505 F.3d at 515. If the defendant satisfies its burden, the burden shifts back to the plaintiff to identify evidence from which a reasonable jury could find that the stated reason is a pretext for discrimination. *Id*. at 515-16. In order to survive summary judgment, a plaintiff need only produce

enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale. *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012).

## 1. **Failure to promote**

Plaintiff claims that Lowe's discriminated against him on the basis of religion by failing to promote him to a manager position due to his inability to work Saturdays. It is a violation of Title VII to fail to promote an employee because of his or her membership in a protected class. *See, e.g., White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005). To establish a claim based on failure to promote, plaintiff must show: (1) he was a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied. *Id.*; *Nguyen v. City of Cleveland,* 229 F.3d 559, 562–63 (6th Cir. 2000).

The dispute here centers on whether plaintiff applied for any management position. Expressing a generalized interest in a position is generally insufficient. *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 146 (6th Cir. 1989). While "[a] generalized expression of interest in a position will not qualify as an application for employment," we have acknowledged that "putting the employer on specific notice of interest is usually sufficient." *Grant v. Harcourt Brace Coll. Pubs.*, No. 98-3829, 1999 WL 717982, at *4 (6th Cir. Sept. 9, 1999) (citing *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1251 (10th Cir. 1992)). Additionally, we have held:

> when the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion . . . the company is held to a duty to consider all those who might reasonably be interested in a promotion were its availability made generally known.

*Dews v. A.B. Dick Co.*, 231 F. 3d 1016, 1022 (6th Cir. 2000). We have said that a nonapplicant in certain circumstances can qualify for relief where he made a "reasonable attempt to demonstrate

to the employer that he is interested in the job." *Harcourt Brace Coll. Pubs.*, 1999 WL 717982, at *4 (citing *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348-49 (3d Cir. 1990) (listing cases in which nonapplicants established prima facie cases of discrimination by showing a reasonable attempt to demonstrate interest in an open position)).

Alternatively, a plaintiff can establish a prima facie case by demonstrating he did not formally apply for the promotion due to discouragement by superiors. *See Wanger,* 872 F.2d at 145 ("Because an employer may create an atmosphere in which employees understand that their applying for certain positions is fruitless, even nonapplicants can in appropriate circumstances qualify for relief . . .") (quoting *Babrocky v. Jewel Food Co. and Retail Meatcutters Union, Local 320*, 773 F.2d 857, 867 (7th Cir. 1985)); *Nguyen*, 229 F.3d at 563–64. For this exception to the general rule to apply, "the circumstances must reveal '*overwhelming* evidence of pervasive discrimination in all aspects of [the employer's] internal employment practices, and [that] . . . any application would have been futile and perhaps foolhardy.'" *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 576 (6th Cir. 2004) (emphasis added and alterations in the original) (quoting *Harless v. Duck*, 619 F.2d 611, 617-18 (6th Cir. 1980)).

Plaintiff concedes he never applied for a specific position, Bolden Dep. at 66-67, but he contends that exceptions to the formal application rule apply. He first argues that Lowe's knew he wanted a manager position if one became available that would accommodate his need to have Saturdays off because he checked the box on his annual review form that he is "very interested in exploring the training for a necessary promotion" while also expressing an interest in a position that would accommodate his Sabbath. Bolden Dep. at 74, 185-187 & Ex. 22. Plaintiff also contends that he didn't apply for a manager position because he was discouraged from doing so when assistant manager Gunkel agreed with plaintiff that he could not be a manager because his

religious beliefs prohibited him from working Saturdays. *Id*. at 67. Plaintiff further argues that promotions were made by word of mouth and he had obtained promotions previously without formally applying, such as his promotion to delivery driver.

For its part, Lowe's argues that plaintiff was not entitled to a promotion because he did not comply with Lowe's policy to formally apply for a manager position. Green Decl. at ¶ 13. Lowe's allows for verbal transfer requests, which plaintiff had made previously, but only for lateral, non-management positions. A formal application is required for promotions to management positions and certain other work changes. *Id.* For example, plaintiff filled out paperwork when he moved from the Madison store to the Dickson store. Bolden Dep. at 69-72.

Plaintiff's evidence shows he expressed only a general interest in a manager position, and such a showing is not enough to meet the application requirement when applying for a management position. His evaluation and career development forms indicate he was satisfied with his job and had little interest in a job change, although he expressed interest in exploring the training required for a promotion. At most, plaintiff expressed only a general interest in a management position at Lowe's, and this is not enough to meet the application requirement.

As for Gunkel's verbal agreement with plaintiff that plaintiff could not hold a management job due to his inability to work Saturdays, this isolated incident involving one assistant manager is not the sort of "evidence of pervasive discrimination in all aspects of [the employer's] internal employment practices" that a plaintiff must put forward to excuse the application requirement. *Bacon*, 370 F.3d at 576 (emphasis added and alterations in the original) (quoting *Harless*, 619 F.2d at 617-18).

Even if plaintiff could demonstrate a disputed issue as to one of the exceptions to the formal application rule, plaintiff's case fails because he did not identify a similarly situated employee who

was not a Seventh Day Adventist and was promoted to a management position without completing an application. Plaintiff has not met the prima facie burden for failure to promote under Title VII or the Tennessee Human Rights Act.

## 2. **Termination**

Plaintiff also claims his religious beliefs caused his termination. Using the four-part burden-shifting framework of *McDonnell Douglas*, only the fourth prong, comparing plaintiff's treatment to others similarly situated, is in dispute. First, as a Seventh Day Adventist, plaintiff is a member of a protected class. Second, the undisputed facts show plaintiff experienced an adverse employment action when he was terminated on July 10, 2017. Third, neither party disputes that plaintiff was qualified for his position at the cash register, which is the job he had when he was terminated. To satisfy the fourth prong, plaintiff compares his conduct concerning his termination for following a shoplifter out of the store to the conduct of four other Lowe's employees: Former Lowe's store manager Hornsby, former Lowe's cashiers Stewart and Shields, and current Lowe's customer service associate Brand, who was working with plaintiff on the day of the shoplifting incident that resulted in plaintiff's termination. To be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his treatment generally "must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (citing *Mazzella v. RCA Global Commc'ns, Inc.*, 642 F. Supp. 1531 (S.D.N.Y. 1986)); *Stotts v. Memphis Fire Dep't*, 858 F.2d 289, 295 (6th Cir. 1988).

Plaintiff provided insufficient evidence of similarly situated employees who engaged in the same conduct and were not terminated. First, plaintiff asserts he was treated differently from

Hornsby, who was only given a warning for engaging in the same conduct. Lowe's argues that plaintiff and Hornsby were not subjected to the same supervisors, same standards, and did not engage in the same conduct. Defendant also notes that Hornsby's conduct occurred more than eleven years before plaintiff's misconduct, and while Hornsby did detain a customer in violation of store policy, plaintiff's actions were more serious because he left his register without notifying management and then pursued a shoplifter out of the store. Defendant further argues that Hornsby was eventually terminated in 2016 for violating the same store policy that resulted in plaintiff's termination when she followed a shoplifter out of the store, into the parking lot, and over to the shoplifter's car. Bond Decl. at ¶¶ 4-5. As to the two cashiers plaintiff identifies as similarly situated, Lowe's offered evidence that they were terminated in 2017 for abandoning their registers to follow a shoplifter. *Id*. at ¶¶ 6-8. Plaintiff did not rebut this evidence, and he identified no material differences between how he and the two similarly situated former cashiers were disciplined.

Brand, the Lowe's employee who worked with plaintiff and also went outside when the shoplifter ran away, was not terminated for his conduct. Brand followed a coworker outside the front door, halted just outside the door before the "yellow lines," and went no further until after he contacted a loss-prevention manager as Lowe's policy instructs. Brand Dep. at 12-13. Plaintiff concedes that Brand stayed behind the "yellow line" just outside the front door and did not continue to follow the shoplifter. Unlike plaintiff, Brand called management before proceeding any further than just outside the doors, whereas plaintiff continued to the lot across the street where customers had detained the shoplifter. *Id*. at 15-19.

Brand's conduct in engaging with the shoplifter was significantly less serious than plaintiff's. Brand's conduct did not put himself or customers at risk of confrontation. He also

called for assistance as directed by store policy. Also relevant, Brand was not stationed at a cash register and therefore did not violate store policy by leaving a register unattended as did plaintiff. Plaintiff has not demonstrated that Brand is a similarly situated employee who was not terminated for similar conduct. Therefore, plaintiff failed to produce sufficient affirmative evidence to establish that the other employees he asserts as comparators were "similarly situated in all respects," or that their conduct was of "comparable seriousness" to the conduct for which he was discharged. Accordingly, plaintiff failed to establish a prima facie case of discrimination on the basis of religion.

### 3. Failure to accommodate his religious beliefs

The district court declined to rule on plaintiff's claim of failure to accommodate his religion in violation of Title VII and the Tennessee Human Rights Act because the court concluded that plaintiff failed to address Lowe's arguments in his opposition to Lowe's summary judgment motion. 2018 WL 4181614, at *3. Plaintiff argues on appeal that the religious accommodation issue was raised in his response to the summary judgment motion as part of his religious discrimination claim. To establish a prima facie case of failure to accommodate, plaintiff must show that "(1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement." *Tepper*, 505 F.3d at 514 (citation omitted).

Under the circumstances here, the accommodation claim is indistinguishable from the discrimination claim discussed above. *See Smith v. Pyro Mining Co.,* 827 F.2d 1081, 1085 (6th Cir. 1987) ("The analysis of any religious accommodation case begins with the question of whether the employee has established a prima facie case of religious discrimination."). Regardless of

whether plaintiff abandoned the accommodation claim, it fails on the merits. Plaintiff cannot establish a prima facie case because he cannot show that his religious belief "conflicts" with any employment requirement. It is undisputed that he was never scheduled to work on Saturdays during his 14-year employment with Lowe's, and he has not raised a genuine issue of material fact regarding whether he was discharged or disciplined for requesting an accommodation.

### 4. Direct evidence of religious discrimination

Plaintiff also claims he has direct evidence of religious discrimination. "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger Co*., 319 F.3d 858, 865 (6th Cir. 2003) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp*., 176 F.3d 921, 926 (6th Cir. 1999)). Such evidence "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id*.[2] "[A] facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." *Nguyen*, 229 F.3d at 563 (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121 (1985)). Once a plaintiff establishes that "the prohibited classification played a motivating part in the [adverse] employment decision," the employer then bears the burden of proving that it would have terminated the plaintiff "even if it had not been motivated by impermissible discrimination." *Id*. (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989) (plurality opinion)).

---

[2] Plaintiff appears to be putting forth a "mixed-motive" theory, although he does not label it or analyze it. As the district court pointed out, plaintiff "presents several undeveloped, conflicting, and confusing arguments. It is not the Court's job to sift through numerous filings and guess a party's precise position or to develop a legal analysis that may lend support to that position." 2018 WL 4181614, at *6 n.9. Because plaintiff did not adequately raise or argue a mixed-motive claim below, it is waived. *See United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009).

The direct evidence on which plaintiff relies comes from his deposition testimony surrounding his meeting in the fall of 2015 when store manager Nick Green asked plaintiff to work Saturdays because the store was short-handed. Bolden Dep. at 47-51, 54, 58. At one point in his deposition, plaintiff asserts that Green threatened to fire him if he did not work Saturdays, but later conceded that Green did not threaten to terminate him but explained that he might need to switch to a department that was not so dependent on Saturday work. *Id*. at 62. It is undisputed that plaintiff was not transferred or disciplined at this time, so he has shown no adverse employment action. Plaintiff also makes vague claims that a coworker, Adam Klaus, told plaintiff that he overheard Green say to assistant manager Vickery that Lowe's needed to find a way to "get rid of [plaintiff] legally." *Id*. at 54. Plaintiff also says that assistant manager Owens was "ticked off" because plaintiff would not work Saturdays, and said so. *Id*. at 49.

To the extent these alleged statements could be construed as direct evidence of discrimination, they do not establish a causal connection between plaintiff's protected activity and any adverse employment action. Where some time elapses between the employer's alleged discriminatory conduct and the adverse employment action, the employee must couple temporal proximity with other evidence to establish causality. *See Little* v. *BP Expl. & Oil Co.*, 265 F.3d 357, 365 (6th Cir. 2001) ("[T]emporal proximity, when considered with the other evidence of retaliatory conduct, is sufficient to create a genuine issue of material fact as to" a causal connection.). The comments occurred in the fall of 2015 and plaintiff was terminated in July 2017. The only discipline plaintiff ever received before his 2017 termination was a written warning in early 2015, nine months *before* the alleged statements were made by Green and Owens. Viewing the evidence in the light most favorable to plaintiff, we will assume the comments were made. But given the 20-month period between the comments and Bolden's ultimate termination, and the lack of any other direct evidence

of discrimination, the allegations do not rise to the level necessary to survive summary judgment. Furthermore, plaintiff has not rebutted Lowe's stated legitimate reason for terminating plaintiff— his violation of the shoplifter policy. Plaintiff has not created a genuine issue of material fact based on his alleged direct evidence of discrimination.

## B. Failure to accommodate disability

The district court granted summary judgment to Lowe's on plaintiff's claim of failure-to-accommodate under the Americans with Disabilities Act and the Tennessee Disabilities Act. Both the federal and state acts prohibit covered employers from discriminating against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a); Tenn. Code Ann. § 8-50-103(b). The federal act also defines "discrimination" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). A claim brought under the Tennessee Disabilities Act is analyzed under the same principles as the federal act. *Cardenas-Meade v. Pfizer, Inc.*, 510 F. App'x 367, 369 n.2 (6th Cir. 2013).

To establish a prima facie failure-to-accommodate claim, a plaintiff must show: (1) he is disabled as defined in the Americans with Disabilities Act; (2) he is otherwise qualified for the position, with or without a reasonable accommodation; (3) his employer knew or had reason to know of his disability; (4) he requested a reasonable accommodation; and (5) the employer failed to provide the reasonable accommodation. *Cotuna v. Wal-Mart Stores, Inc.*, No. 16–2519, 2017 WL 5171247, at *2 (6th Cir. Aug. 31, 2017). The employee bears the burden of requesting a

reasonable accommodation and showing that the accommodation he seeks is objectively reasonable. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007).

Plaintiff complains that Lowe's did not accommodate him after he reinjured his ankle because it placed him on leave instead of reassigning him to a different job. According to the undisputed facts, plaintiff's physician submitted an Accommodation Request Assessment Form stating plaintiff needed a "sedentary position as much as possible" and was restricted from carrying, pushing or pulling any weight whatsoever, squatting or kneeling whatsoever, and could only bend/stoop occasionally. Bolden Dep. at 124-42 & Ex. 10. Plaintiff argues that Lowe's should have kept him working as a phone operator or in the office instead of placing him on unpaid leave. Plaintiff does not offer any evidence other than his opinion that there were full-time jobs as a phone operator or in the office, or that there were openings for those positions at the time he needed sedentary work.

Lowe's maintains that it does not have any jobs considered "sedentary." Seay Decl. at ¶ 12. Due to the restrictions placed on plaintiff by his physician, Lowe's could not safely accommodate plaintiff at any available job, such as at a cash register or customer service desk because those jobs require work that was in excess of his medical restrictions, and would not allow him to remain sedentary. *Id.* Plaintiff provided no facts to show he could perform the functions of any available jobs, such as cashier, and he did not demonstrate that his other suggestions, such as working as a phone operator or doing office work, allowed for reasonable accommodation consistent with his physician's restrictions or that such jobs were even available. Instead, plaintiff accepted the unpaid leave of absence from October 14, 2016, until March 16, 2017. We have held that medical leave may constitute a reasonable accommodation under the Americans with Disabilities Act. *See Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998); *Hankins v. The Gap,*

*Inc.,* 84 F.3d 797, 801 (6th Cir. 1996).  The district court did not err in finding that plaintiff failed to make a prima facie case of failure-to-accommodate under the Americans with Disabilities Act or the Tennessee Disabilities Act.

For the foregoing reasons, we affirm the judgment of the district court.